1  CENTER FOR DISABILITY ACCESS
   Ray Ballister, Jr., Esq., SBN 111282
2  Mark Potter, Esq., SBN 166317
   Phyl Grace, Esq., SBN 171771
3  Dennis Price, SBN 279082
   Mail: PO Box 262490
4  San Diego, CA 92196-2490
   Delivery: 9845 Erma Road, Suite 300
5  San Diego, CA 92131
   (858) 375-7385; (888) 422-5191 fax
6  phylg@potterhandy.com

7  Attorneys for Plaintiffs

8

9                    UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

12  **Scott Schutza**,                          | Case No. **3:16-CV-00482-L-JMA**

13         Plaintiff,

14      v.                                       **First Amended Complaint For Damages And Injunctive Relief**

15  **Kaiser Foundation Hospitals,**            **For** Violations Of: American's With
    **LLC,** a California Corporation;          Disabilities Act; Unruh Civil Rights
16  **Mission Trails, LLC,** a Delaware         Act
    Limited Liability Company;
17  **Velimir Petakovich,** in his capacity
    as Trustee;
18  **Ljubinka Petakovich,** in her
    capacity as Trustee;
19  **Kaiser Foundation Health Plan,**
    **Inc.,** a California Corporation;
20  and Does 1-10,

21         Defendants.

22       Plaintiff Scott Schutza complains of Defendants Kaiser Foundation

23  Hospitals, LLC; Mission Trails, LLC; Velimir Petakovich; Ljubinka

24  Petakovich; Kaiser Foundation Health Plan, Inc.; and Does 1-10

25  ("Defendants") and alleges as follows:

26

27       **PARTIES**:

28  1.  Plaintiff is a California resident with physical disabilities. He is a

                                        1

---

First Amended Complaint                    Case No. 3:16-CV-00482-L-JMA

1   paraplegic who cannot walk and who uses a wheelchair for mobility.

2   2.   In February 2014, Defendant Kaiser Foundation Hospitals was the real
3   property owner of the building/parcel located at or about 4405 Vandever
4   Avenue, San Diego, California.

5   3.   In March 2014, Defendant Kaiser Foundation Hospitals was the real
6   property owner of the building/parcel located at or about 4405 Vandever
7   Avenue, San Diego, California.

8   4.   In April 2014, Defendant Kaiser Foundation Hospitals was the real
9   property owner of the building/parcel located at or about 4405 Vandever
10  Avenue, San Diego, California.

11  5.   In May 2014, Defendant Kaiser Foundation Hospitals was the real
12  property owner of the building/parcel located at or about 4405 Vandever
13  Avenue, San Diego, California.

14  6.   In June 2014, Defendant Kaiser Foundation Hospitals was the real
15  property owner of the building/parcel located at or about 4405 Vandever
16  Avenue, San Diego, California.

17  7.   In July 2014, Defendant Kaiser Foundation Hospitals was the real
18  property owner of the building/parcel located at or about 4405 Vandever
19  Avenue, San Diego, California.

20  8.   In August 2014, Defendant Kaiser Foundation Hospitals was the real
21  property owner of the building/parcel located at or about 4405 Vandever
22  Avenue, San Diego, California.

23  9.   In September 2014, Defendant Kaiser Foundation Hospitals was the
24  real property owner of the building/parcel located at or about 4405 Vandever
25  Avenue, San Diego, California.

26  10. In October 2014, Defendant Kaiser Foundation Hospitals was the real
27  property owner of the building/parcel located at or about 4405 Vandever
28  Avenue, San Diego, California.

First Amended Complaint                           Case No. 3:16-CV-00482-L-JMA

11. In November 2014, Defendant Kaiser Foundation Hospitals was the real property owner of the building/parcel located at or about 4405 Vandever Avenue, San Diego, California.

12. In December 2014, Defendant Kaiser Foundation Hospitals was the real property owner of the building/parcel located at or about 4405 Vandever Avenue, San Diego, California.

13. Defendant Kaiser Foundation Hospitals is the current real property owner of the building/parcel located at or about 4405 Vandever Avenue, San Diego, California.

14. In April 2014, Defendant Kaiser Foundation Hospitals was the real property owner of the building/parcel located at or about 4647 Zion Avenue, San Diego, California.

15. In May 2014, Defendant Kaiser Foundation Hospitals was the real property owner of the building/parcel located at or about 4647 Zion Avenue, San Diego, California.

16. Defendant Kaiser Foundation Hospitals is the current real property owner of the building/parcel located at or about 4647 Zion Ave, San Diego, California.

17. In April 2014, Defendant Mission Trails, LLC was the real property owner of the building/parcel located at or about 7385 Mission Gorge Avenue, San Diego, California.

18. In November 2014, Defendant Mission Trails, LLC was the real property owner of the building/parcel located at or about 7385 Mission Gorge Avenue, San Diego, California.

19. In December 2014, Defendant Mission Trails, LLC was the real property owner of the building/parcel located at or about 7385 Mission Gorge Avenue, San Diego, California.

20. Defendant Mission Trails, LLC is the current real property owner of

First Amended Complaint                    Case No. 3:16-CV-00482-L-JMA

the building/parcel located at or about 7385 Mission Gorge Avenue, San Diego, California.

21. In February 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

22. In March 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

23. In April 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

24. In May 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

25. In August 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

26. In September 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

27. In October 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

28. In December 2015, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

29. In January 2016, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue,

First Amended Complaint                    Case No. 3:16-CV-00482-L-JMA

San Diego, California.

30. In March 2016, Defendant Velimir Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

31. Defendant Velimir Petakovich is a current real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

32. In February 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

33. In March 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

34. In April 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

35. In May 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

36. In August 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

37. In September 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

38. In October 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

5

39. In December 2015, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

40. In January 2016, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

41. In March 2016, Defendant Ljubinka Petakovich was a real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

42. Defendant Ljubinka Petakovich is a current real property owner of the building/parcel located at or about 4510 Viewridge Avenue, San Diego, California.

43. In February 2014, Defendant Kaiser Foundation Hospitals was the business owner of the Kaiser Permanente Medical Offices located at or about 4405 Vandever Avenue, San Diego, California ("Kaiser Vandever").

44. In March 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

45. In April 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

46. In May 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

47. In June 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

48. In July 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

49. In August 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

50. In September 2014, Defendant Kaiser Foundation Hospitals was the

business owner of Kaiser Vandever.

51. In October 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

52. In November 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

53. In December 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Vandever.

54. Defendant Kaiser Foundation Hospitals is the current business owner of Kaiser Vandever.

55. In April 2014, Defendant Kaiser Foundation Hospitals was the business owner of the Kaiser Permanente Medical Center, located at or about 4647 Zion Ave, San Diego, California ("Kaiser Zion").

56. In May 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Zion.

57. Defendant Kaiser Foundation Hospitals is the current business owner of Kaiser Zion.

58. In April 2014, Defendant Kaiser Foundation Hospitals was the business owner of the Kaiser Permanente Medical Offices located at or about 7385 Mission Gorge Avenue, San Diego, California ("Kaiser Mission Gorge").

59. In November 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Mission Gorge.

60. In December 2014, Defendant Kaiser Foundation Hospitals was the business owner of Kaiser Mission Gorge.

61. Defendant Kaiser Foundation Hospitals is the current business owner of Kaiser Mission Gorge.

62. In February 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of the Kaiser Permanente Kearny Mesa Rehabilitation

Center, located at or about 4510 Viewridge Avenue, San Diego, California ("Kaiser Viewridge").

63. In March 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

64. In April 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

65. In May 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

66. In August 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

67. In September 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

68. In October 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

69. In December 2015, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

70. In January 2016, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

71. In March 2016, Defendant Kaiser Foundation Health Plan, Inc. was the business owner of Kaiser Viewridge.

72. Defendant Kaiser Foundation Health Plan, Inc. is the current business owner of Kaiser Viewridge.

73. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for

First Amended Complaint                              Case No. 3:16-CV-00482-L-JMA

the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

74. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

75. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

76. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

77. Kaiser Vandever is a facility open to the public, a business establishment and a place of public accommodation.

78. Transaction counters are one of the facilities, privileges and advantages offered by Defendants to patrons of Kaiser Vandever.

79. In February 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

80. In March 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

9

81. In April 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

82. In May 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

83. In June 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

84. In July 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

85. In August 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

86. In September 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

87. In October 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

88. In November 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

89. In December 2014, there was a lowered transaction counter in the pharmacy, but Defendants had a practice of not staffing the counter such that it remained opened and usable by persons with disabilities.

90. Currently, there is a lowered transaction counter in the pharmacy, but

First Amended Complaint                              Case No. 3:16-CV-00482-L-JMA

Defendants have a practice of not staffing the counter such that it remains open and usable by persons with disabilities.

91. Kaiser Zion is a facility open to the public, a business establishment and a place of public accommodation.

92. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Kaiser Zion.

93. Unfortunately, the parking lot serving Kaiser Zion is not accessible to persons with disabilities.

94. In April 2014, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

95. In April 2014, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Zion had cross slopes greater than 2%.

96. In April 2014, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Zion did not have the required tow-away signage.

97. In May 2014, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

98. In May 2014, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Zion had cross slopes greater than 2%.

99. In May 2014, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Zion did not have the required tow-away signage.

100.    Currently, Defendants have failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

101.    Currently, many of the parking spaces marked and reserved for

persons with disabilities at Kaiser Zion have cross slopes greater than 2%.

102.    Currently, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Zion do not have the required tow-away signage.

103.    Transaction counters are another one of the facilities, privileges and advantages offered by Defendants to patrons of Kaiser Zion.

104.    In April 2014, Defendants offered a disabled persons window in the pharmacy, but there was no lowered, 36-inch or lower transaction counter available for disabled patrons to conduct business.

105.    In April 2014, Defendants had a practice of not staffing the window such that it remained opened and usable by persons with disabilities.

106.    In April 2014, a disabled patron wishing to use this window was forced to push a call button many times and simply wait for a staff member to arrive.

107.    In May 2014, Defendants offered a disabled persons window in the pharmacy, but there was no lowered, 36-inch or lower transaction counter available for disabled patrons to conduct business.

108.    In May 2014, Defendants had a practice of not staffing the window such that it remained opened and usable by persons with disabilities.

109.    In May 2014, a disabled patron wishing to use this window was forced to push a call button many times and simply wait for a staff member to arrive.

110.    Currently, Defendants offer a disabled persons window in the pharmacy, but there is no lowered, 36-inch or lower transaction counter available for disabled patrons to conduct business.

111.    Currently, Defendants have a practice of not staffing the window such that it remains open and usable by persons with disabilities.

112.    Currently, a disabled patron wishing to use this window is forced

First Amended Complaint                          Case No. 3:16-CV-00482-L-JMA

to push a call button many times and simply wait for a staff member to arrive.

113.    Kaiser Mission Gorge is a facility open to the public, a business establishment and a place of public accommodation.

114.    Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Kaiser Mission Gorge.

115.    Unfortunately, the parking lot serving Kaiser Mission Gorge is not accessible to persons with disabilities.

116.    In April 2014, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

117.    In April 2014, many of the parking spaces marked and reserved for persons with disabilities on the west side of the Kaiser Mission Gorge facility had cross slopes greater than 2%.

118.    In November 2014, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

119.    In November 2014, many of the parking spaces marked and reserved for persons with disabilities on the west side of the Kaiser Mission Gorge facility had cross slopes greater than 2%.

120.    In December 2014, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

121.    In December 2014, many of the parking spaces marked and reserved for persons with disabilities on the west side of the Kaiser Mission Gorge facility had cross slopes greater than 2%.

122.    Currently, Defendants have failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

First Amended Complaint                          Case No. 3:16-CV-00482-L-JMA

123.    Currently, many of the parking spaces marked and reserved for persons with disabilities on the west side of the Kaiser Mission Gorge facility have cross slopes greater than 2%.

124.    Kaiser Viewridge is a facility open to the public, a business establishment and a place of public accommodation.

125.    Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Kaiser Viewridge.

126.    Unfortunately, the parking lot serving Kaiser Viewridge is not accessible to persons with disabilities.

127.    In February 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

128.    In February 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

129.    In February 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

130.    In February 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

131.    In March 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

132.    In March 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

133.    In March 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

134.    In March 2015, some of the access aisles at Kaiser Viewridge

had curb ramps running into them, causing running slopes greater than 2%.

135.    In April 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

136.    In April 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

137.    In April 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

138.    In April 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

139.    In May 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

140.    In May 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

141.    In May 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

142.    In May 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

143.    In August 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

144.    In August 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

145.    In August 2015, many of the access aisles at Kaiser Viewridge

First Amended Complaint                    Case No. 3:16-CV-00482-L-JMA

had cross slopes greater than 2%.

146.     In August 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

147.     In September 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

148.     In September 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

149.     In September 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

150.     In September 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

151.     In October 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

152.     In October 2015, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

153.     In October 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

154.     In October 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

155.     In December 2015, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

156.     In December 2015, many of the parking spaces marked and

First Amended Complaint                          Case No. 3:16-CV-00482-L-JMA

reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

157.     In December 2015, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

158.     In December 2015, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

159.     In January 2016, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

160.     In January 2016, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

161.     In January 2016, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

162.     In January 2016, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

163.     In March 2016, Defendants failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

164.     In March 2016, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge had cross slopes greater than 2%.

165.     In March 2016, many of the access aisles at Kaiser Viewridge had cross slopes greater than 2%.

166.     In March 2016, some of the access aisles at Kaiser Viewridge had curb ramps running into them, causing running slopes greater than 2%.

167.     Currently, Defendants have failed to maintain the parking

spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

168. Currently, many of the parking spaces marked and reserved for persons with disabilities at Kaiser Viewridge have cross slopes greater than 2%.

169. Currently, many of the access aisles at Kaiser Viewridge have cross slopes greater than 2%.

170. Currently, some of the access aisles at Kaiser Viewridge have curb ramps running into them, causing running slopes greater than 2%.

171. Plaintiff visited Kaiser Vandever in February 2014.

172. Plaintiff visited Kaiser Vandever in March 2014.

173. Plaintiff visited Kaiser Vandever in April 2014.

174. Plaintiff visited Kaiser Vandever in May 2014.

175. Plaintiff visited Kaiser Vandever in June 2014.

176. Plaintiff visited Kaiser Vandever in July 2014.

177. Plaintiff visited Kaiser Vandever in August 2014.

178. Plaintiff visited Kaiser Vandever in September 2014.

179. Plaintiff visited Kaiser Vandever in October 2014.

180. Plaintiff visited Kaiser Vandever in November 2014.

181. Plaintiff visited Kaiser Vandever in December 2014.

182. Plaintiff visited Kaiser Zion in April 2014.

183. Plaintiff visited Kaiser Zion in May 2014.

184. Plaintiff visited Kaiser Mission Gorge in April 2014.

185. Plaintiff visited Kaiser Mission Gorge in November 2014.

186. Plaintiff visited Kaiser Mission Gorge in December 2014.

187. Plaintiff visited Kaiser Viewridge in February 2015.

188. Plaintiff visited Kaiser Viewridge in March 2015.

189. Plaintiff visited Kaiser Viewridge in April 2015.

190.     Plaintiff visited Kaiser Viewridge in May 2015.

191.     Plaintiff visited Kaiser Viewridge in August 2015.

192.     Plaintiff visited Kaiser Viewridge in September 2015.

193.     Plaintiff visited Kaiser Viewridge in October 2015.

194.     Plaintiff visited Kaiser Viewridge in December 2015.

195.     Plaintiff visited Kaiser Viewridge in January 2016.

196.     Plaintiff visited Kaiser Viewridge in March 2016.

197.     Plaintiff personally encountered these violations and they denied him full and equal access and caused him great difficulty and frustration.

198.     Plaintiff would like to return and patronize Kaiser Vandever but will be deterred from visiting until Defendants cure the violations.

199.     Plaintiff would like to return and patronize Kaiser Zion but will be deterred from visiting until Defendants cure the violations.

200.     Plaintiff would like to return and patronize Kaiser Mission Gorge but will be deterred from visiting until Defendants cure the violations.

201.     Plaintiff would like to return and patronize Kaiser Viewridge but will be deterred from visiting until Defendants cure the violations.

202.     The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

203.     Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the

19

lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

204.     Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

205.     Plaintiff is and has been deterred from returning and patronizing Kaiser Vandever, Kaiser Zion, Kaiser Mission Gorge, and Kaiser Viewridge because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the medical centers to assess ongoing compliance with the ADA and will return to patronize all four Kaiser locations as a patient once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

206.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

207.     Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal

basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

     a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

     b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

     c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

208.    A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. 28 C.F.R. § 36.302(a).

209.     Here, the failure to put in place a policy, practice or procedure regarding staffing of disabled transaction counters at Kaiser Vandever is a violation of the ADA.

210.     Here, the failure to put in place a policy, practice or procedure regarding staffing of disabled transaction counters at Kaiser Zion is a violation of the ADA.

211.     In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

212.     Here, no such accessible cashier counter or a lowered, 36-inch counter has been provided at Kaiser Zion in violation of the ADA.

213.     Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2.  Under the California Building Code, to properly and effectively reserve a parking space for persons with

First Amended Complaint                    Case No. 3:16-CV-00482-L-JMA

disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id*. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id*. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id*. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id*. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id*.

214.    The failure to provide proper signage at Kaiser Zion is a violation of the ADA.

215.    The failure to provide parking measuring at least 216 inches in length at Kaiser Viewridge is a violation of the ADA.

216.    The failure to provide access aisles measuring at least 216 inches in length at Kaiser Viewridge is a violation of the ADA.

217.    Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up

23

curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

218.    The failure to provide level parking at Kaiser Zion is a violation of the ADA.

219.    The failure to provide level parking at Kaiser Mission Gorge is a violation of the ADA.

220.    The failure to provide level parking at Kaiser Viewridge is a violation of the ADA.

221.    A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

222.    Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

223.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

224.    Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

225.    Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, *i.e*., a civil penalty. (Civ. Code § 55.56(a)-(c).)

First Amended Complaint                                Case No. 3:16-CV-00482-L-JMA

1
2      **PRAYER**:
3          Wherefore, Plaintiff prays that this Court award damages and provide
4   relief as follows:
5          1. For injunctive relief, compelling Defendants to comply with the
6   Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the
7   plaintiff is not invoking section 55 of the California Civil Code and is not
8   seeking injunctive relief under the Disabled Persons Act at all.
9          2. Damages under the Unruh Civil Rights Act and/or the California
10  Disabled Persons Act, which provide for actual damages and a statutory
11  minimum of $4,000.
12         3. Reasonable attorney fees, litigation expenses and costs of suit,
13  pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.
14
15  Dated: May 27, 2016                    CENTER FOR DISABILITY ACCESS
16
17                                         By:   /s/ Mark Potter
18                                         Mark Potter, Esq.
                                           Attorneys for Plaintiff
19
20
21
22
23
24
25
26
27
28

First Amended Complaint                        Case No. 3:16-CV-00482-L-JMA